UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                          )<br>                                              )   Criminal No. 1:06-cr-00341 RMC<br>KEITH ODLE,                         )<br>                                              )<br>            Defendant.           )<br>_____) | |

### DEFENDANT KEITH ODLE'S
### MEMORANDUM IN AID OF SENTENCING

Mr. Odle has pled guilty to a two-count Information and is scheduled to be sentenced on December 20, 2006 at 2:00 p.m. Through counsel, Mr. Odle respectfully submits this Memorandum for the Court's consideration in conjunction with his sentencing.

### INTRODUCTION

On November 8, 2002, Mr. Odle was arrested at Eddie Leonard's Carryout in the District for possession with intent to distribute a detectable amount of PCP and ecstasy. The case was "no papered" in Superior Court. On December 16, 2002, Mr. Odle was arrested in Maryland and charged with being a felon in possession of a firearm. Mr. Odle pled guilty to that offense in the District of Maryland and was sentenced to 57 months' imprisonment. He has been serving that sentence from December 2002 to the present, primarily in Petersburg, Virginia.

Approximately three years later, on October 19, 2005, while still incarcerated, Mr. Odle was charged in a superseding indictment before this Court with being a member of the "M Street Crew." He was charged with a narcotics conspiracy and a RICO conspiracy and two substantive offenses of possession with intent to distribute PCP and ecstasy. The latter two offenses related to the November 8, 2002 incident at Eddie Leonard's Carryout. While not referenced in the

Superseding Indictment, the Government has proffered to the Court that as Mr. Odle was being led away from Eddie Leonard's Carryout in custody, Larry Gooch allegedly fired shots at patrol cars in the parking lot. As the agreed statement of facts supporting the guilty plea unambiguously reflects, Mr. Odle was not a participant in this shooting and, indeed, was unaware that this shooting occurred. See Facts in Support of Guilty Plea to Narcotics Conspiracy and RICO Conspiracy at 2 ("Keith Odle was about to be transported from the location by members of the Metropolitan Police Department when another person (unknown to him) fired a handgun at the police cars parked outside the establishment.").

The Superseding Indictment lists 142 overt acts in furtherance of the charged conspiracies and names Mr. Odle in only three of them. Each of the three occurred in November 2002 (Eddie Leonard's Carryout) or December 2002 (possession of a firearm). It is no accident of pleading that the Superseding Indictment suggests that Mr. Odle was a brief and relatively minor participant in the charged conspiracies. The Government concedes that not only was Mr. Odle incarcerated for the latter part of the conspiracy, but he was also not an early member of the conspiracy. See Government's Notice of Extrinsic Evidence (July 19, 2006) at 12 ("Keith Odle was not an original crew member nor from M Street"). Rather, the Government characterizes Mr. Odle as a "short term crew member." Id.

Mr. Odle has lived in Maryland his entire life. See Draft Presentence Investigation Report (Dec. 12, 2006) at 16 (¶ 52) [hereinafter "Presentence Report"].[1] His father lives in Hyattsville and his mother lives in Bowie. Id. at 15 (¶ 46). His parents divorced when he was eight years old. Id. Mr. Odle began drinking alcohol and using marijuana when he was thirteen years old and by the time he was seventeen, he was a heavy drinker and marijuana user and a

---

[1] Because of an apparent typographical error in numbering the paragraphs of the Presentence Report, citations thereto will refer to both the page number and the paragraph number as actually listed in the December 12, 2006 draft report.

regular user of cocaine. Id. at 17-18 (¶¶ 58-60). By age 20, Mr. Odle was also a heavy user of ecstasy. Id. at 18 (¶ 62). Despite this history, Mr. Odle was not the beneficiary of any formal alcohol or drug treatment programs prior to his present incarceration. Id. at 18 (¶ 63).

Mr. Odle received his high school diploma in 2000 from Northwestern High School in Hyattsville. Id. at 18 (¶ 66). Mr. Odle took courses at Montgomery College in Rockville during the Fall 2000 semester, but was incarcerated and unable to return to classes in the Spring of 2001. Id. at 19 (¶ 68).

Mr. Odle started selling drugs to support his own habit. Id. at 17 (¶ 59), 18 (¶ 62). However, consistent with the discussion above, Mr. Odle was never a full-time member of the M Street Crew, nor has he ever made a living selling drugs. Unlike his co-defendants, he has a solid track record of legitimate employment. See Government's Notice of Extrinsic Evidence (July 19, 2006) at 15 (stating that "except for Mr. Odle," the Government has obtained documentary evidence from tax records or the lack of filing showing that the defendants have not been lawfully employed for significant periods of their adult lives, which is circumstantial evidence tending to prove that they supported themselves through illicit means). Mr. Odle has worked as a barber at Salon Lamaj in the District, has worked for Barwood Taxi in Montgomery County and has worked as a temp in the mail room of the law firm of Wilmer, Cutler & Pickering in Washington. See Presentence Report at 19 (¶¶ 70-72).

As with his schooling, Mr. Odle's employment has been interrupted by his incarceration. Quite simply, Mr. Odle's untreated drug and alcohol abuse, and his participation in illegal drug sales to finance his habits, have repeatedly interfered with Mr. Odle's otherwise positive record of education and gainful employment. Mr. Odle's lengthy track record of education and gainful, lawful employment provide every reason for the Court to be encouraged that should Mr. Odle be

able to conquer his substance abuse, he will be a solid contributor to society upon the completion of his current period of incarceration.

## ARGUMENT

Mr. Odle's sentencing range under his plea agreement is 10 to 16 years, to be served concurrently with the 57-month sentence that Mr. Odle is presently serving on the firearm offense that constituted an overt act in furtherance of the present charges. Mr. Odle has almost completed that sentence. Indeed, but for the present charges, Mr. Odle would have been released to a halfway house months ago. Instead, he has spent that time in Petersburg, and for the last few months, the D.C. Jail. Under the plea agreement, the Government has agreed to allocute for a sentence in the plea range of 10 to 16 years, to be served concurrently with the 57-month sentence. For the reasons set forth below, Mr. Odle respectfully requests a sentence of 10 years, which would effectively result in Mr. Odle serving an additional 63 months upon the expiration of his current sentence.

### I.     The Advisory Sentencing Guidelines

As set forth in the plea agreement, Mr. Odle's advisory Guidelines range is 131 to 178 months. This range results from an extraordinary enhancement under the Guidelines based on Mr. Odle's criminal history. As noted above, Mr. Odle, for his young age (he was 22 when he was incarcerated on the firearms offense), has a relatively lengthy criminal history related to his efforts to support his substance habits. He has a juvenile conviction of a misdemeanor theft under $300 in Maryland. See Presentence Report at 8 (¶ 28). At age 18, he was convicted of simple possession of cocaine. Id. at 8-9 (¶ 29). Also at age 18, he was twice convicted of possession of cocaine with intent to distribute. Id. at 9-10 (¶ 30), 10-11 (¶ 25). This criminal

history results in nine criminal history points and places Mr. Odle in criminal history Category IV. Id. at 12 (¶ 34).

As noted in the plea agreement, because Mr. Odle has two or more prior drug trafficking offenses and is therefore treated as a career criminal, the ordinary offense level adjustments contemplated under the Guidelines become irrelevant and Mr. Odle's offense level is 34 and he is treated as a Category VI offender. After receiving three points for acceptance of responsibility, his adjusted offense level is 31, which at Category VI yields a sentencing range of 131 to 178 months (after credit for the 57-month sentence already being served). See U.S.S.G. § 5G1.3(b); Plea Letter from counsel for the United States to counsel for Mr. Odle (Nov. 9, 2006) at ¶ 5a.

This Guidelines calculation should be contrasted with the Guidelines calculation without the extraordinary enhancement based on Mr. Odle's status as a career criminal. Based on the quantity of drugs attributable to Mr. Odle, he would start at a level 32 pursuant to the drug quantity table. See U.S.S.G. § 2D1.1. Mr. Odle would receive a two-level enhancement under § 2D1.1(b)(1) for possession of a firearm, but Mr. Odle would also be eligible for a four-level reduction in his offense level under § 3B1.2, since he was a minimal participant in the alleged offense conduct. This would result in an offense level of 30. Following receipt of the three-level adjustment for acceptance of responsibility, Mr. Odle would have an adjusted offense level of 27. As a Category IV offender, which already takes into account his prior drug offenses, Mr. Odle would be in a sentencing range of 100 to 125 months, to be served concurrently with his present 57-month sentence.

The movement from an offense level 27, Category IV offender to an offense level 31, Category VI offender is an extraordinarily harsh result based on two prior state drug distribution

convictions — both at the age of 18, each for small quantities of drugs. (The first of the two distribution offenses does not provide the street value of the drugs in Mr. Odle's possession; on the second occasion, Mr. Odle possessed cocaine with a street value of $60. See Presentence Report at 10-11 (¶ 25).)

Under the circumstances, Mr. Odle's criminal history over-represents the seriousness of his prior criminal conduct and his likelihood of recidivism; therefore a downward departure would be appropriate. See, e.g., United States v. Clark, 8 F.3d 839, 843-44 (D.C. Cir. 1993) (affirming that the district court was within its legal authority to depart downward based on the fact that the defendant's career offender status over-stated the seriousness of his criminal history or the likelihood of recidivism, and remanding for resentencing after consideration of factors such as the nature and timing of the defendant's prior offenses); United States v. Bowser, 941 F.2d 1019, 1024-26 (10th Cir. 1991) (affirming downward departure for over-representation of criminal history where two prior convictions were for offenses committed when defendant was 20 years old, they were committed close in time, and they were consolidated for sentencing); United States v. Senior, 935 F.2d 149, 151 (8th Cir. 1991) (affirming downward departure based on overstatement of seriousness of criminal history, citing defendant's age when prior drug offenses were committed, proximity in time, and state's assessment of seriousness of prior offenses as reflected in its handling of sentencing and length of time actually served); United States v. Nielsen, 427 F. Supp. 2d 872, 877-81 (N.D. Iowa 2006) (departing from sentence that would otherwise fall within the career-offender criminal history category, based on the defendant's relative youthfulness, his brief criminal career, the relatively minor nature of his prior offenses, and the temporal proximity between the predicate offenses used to trigger the career-offender status (less than two years apart)); United States v. Lacy, 99 F. Supp. 2d 108,

121-23 (D. Mass. 2000) (departing downward in sentencing of defendant who otherwise fell within the career-offender category, after finding that his record was largely non-violent, that his prior offenses all took place within a short period of time, and that his record reflected his drug addiction); United States v. Hall, 40 F. Supp. 2d 340, 342-44 (D. Md. 1999) (holding that downward departure could be warranted when defendant's priors — at age 19 and 21 — were two relatively minor drug offenses in quick succession, were committed when he was a young man, and were such that he received mild sentences).

Thus, even if the Guidelines were mandatory, a downward departure would be warranted here. Departing to the requested level of 120 months (the low end of the plea agreement range), would result in Mr. Odle serving in the upper end of the 100 to 125-month range that his non-career criminal offense level and criminal history would dictate. Accordingly, after the requested departure, Mr. Odle would be left with a sentence that was both "severe and appropriate." See Hall, 40 F. Supp. 2d at 343.

Of course, the Guidelines are no longer mandatory. United States v. Booker, 543 U.S. 220 (2005). Accordingly, the Court need not decide whether it would have granted the requested departure in a mandatory Guidelines regime. As set forth below, the other factors under 18 U.S.C. § 3553(a) that must be considered pursuant to *Booker* militate in favor of the requested sentence.

## II.   Section 3553 Requires a Sentence Sufficient, but Not Greater than Necessary

Section 3553(a) dictates that a court *shall* impose a sentence "sufficient, but not greater than necessary" to meet the statutory objectives of sentencing: 1) to reflect the seriousness of the offense, to encourage respect for the law, and to provide just punishment; 2) to afford adequate deterrence; 3) to protect the public; and 4) to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553 (a)(1),(2). This dictate has appropriately taken on a renewed meaning post-*Booker*. See United States v. Foreman, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (sentencing court's "job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).'"); United States v. Jimenez-Beltre, 440 F.3d 514, 525 n.8 (1st Cir. 2006) (sufficient, but not greater than necessary provision "is not just another 'factor' to be considered along with others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose").

### A. The Seriousness of the Offense, Respect for the Law and Just Punishment

In pleading guilty to the Information against him, Mr. Odle has plainly accepted responsibility for extremely serious offenses. At the same time, as discussed above, in assessing the "sufficient, but not greater than necessary" sentence warranted in order for Mr. Odle to receive just punishment, it is important to bear in mind Mr. Odle's relatively minor role in the charged offense conduct. The bottom of the agreed-upon plea sentencing range, a sentence of 10 years' imprisonment, is a severe penalty. Prior to commencing his present sentence, Mr. Odle had previously had contact only with the state criminal justice system. He is now already bearing the consequences of having violated federal law. Unlike his prior state sentences, the sentence he is currently serving, which at the low end of the agreed-upon range would be more than doubled by adding an additional 63 months, undoubtedly promotes respect for the law and signifies the seriousness of Mr. Odle's present offense conduct.

### B. Adequate Deterrence

For the reasons set forth in the preceding paragraph, the requested sentence of ten years' imprisonment easily affords adequate deterrence. Mr. Odle will, regardless of the Court's decision, serve a lengthy prison sentence. Moreover, Mr. Odle vividly understands that he now has a criminal history that would, if he were to repeat his offense conduct once released, necessarily result in a mandatory life sentence without parole. It is difficult to envision greater deterrence.

### C. Protection of the Public

As set forth above, Mr. Odle in no way minimizes the seriousness of his offense conduct. However, in comparison with his alleged co-conspirators, there is a plain distinction between those defendants charged with multiple murders and other violent offenses and Mr. Odle, who is not alleged to have committed any violence. Indeed, a review of Mr. Odle's criminal history reveals no history of violence on his part whatsoever. Illegal drug dealing naturally breeds violence and Mr. Odle, as discussed above, has every incentive to steer clear of such conduct in the future. In assessing Mr. Odle's individual danger to the community, however, the Court should not overlook the complete absence of violence in his past.

### D. Providing the Defendant with Needed Correctional Treatment

This last factor may be the most significant in this case. Mr. Odle entered the Bureau of Prisons as a young man with a high school diploma, some college education and a history of lawful gainful employment. Mr. Odle's downfall was that he was 22-year-old substance abuser

who never received appropriate treatment for his substance issues. During his current incarceration, while at Petersburg, he completed a 40-hour drug treatment program.[2]

At the low-end of the sentencing range set by the plea agreement, by the time of his release, Mr. Odle will have served virtually his entire adult life in prison and will not have used drugs or alcohol for a decade. He will also have had the opportunity to avail himself of the full panoply of drug and alcohol treatment offered by the Bureau of Prisons. He would re-enter society in his early 30's with the opportunity to rejoin the work force and/or continue his education. Having received all of the correctional treatment that can be offered, his success or failure will be up to him.

There is nothing that a longer period of incarceration can accomplish in terms of the effective provision of education, vocational training, medical care, or other correctional treatment. Rather, a longer sentence would simply lengthen Mr. Odle's exposure to hardened criminals and further delay his re-entry into society.

## CONCLUSION

For the reasons set forth above, Mr. Odle respectfully requests a prison sentence of ten years, to be served concurrently with the sentence he is presently serving. He requests that the Court recommend any drug and alcohol treatment deemed appropriate for him while he is imprisoned, to continue through his period of supervised release. The sentence requested by Mr. Odle is within the range in which the Government has agreed to allocute and would be permissible under the mandatory Guidelines with a reasonable downward departure for over-representation of criminal history. More significantly, the sentence sought by Mr. Odle is a

---

[2] Mr. Odle has also voluntarily taken advantage of several other programs offered at Petersburg, including business courses, a training program through which he has obtained his commercial drivers license, another program geared toward developing a career as a personal trainer, and an AIDS awareness class.

10

"sufficient, but not greater than necessary" sentence reflecting the statutory objectives of § 3553. It is, therefore, a reasonable, and appropriate, post-*Booker* sentence.

                                                Respectfully submitted,

                                                KELLEY DRYE COLLIER SHANNON

                        By:       /s/
                                                Barry J. Pollack
                                                Dawn E. Murphy-Johnson
                                                3050 K Street, N.W.
                                                Washington Harbour – Suite 400
                                                Washington, D.C. 20007
                                                Telephone: (202) 342-8472
                                                Facsimile: (202) 342-8451

Date: December 14, 2006                          *Counsel for Keith Odle*