# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 1:06-cr-00341 RMC |
| KEITH ODLE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING OF
## DEFENDANT KEITH ODLE'S REVISED
## MEMORANDUM IN AID OF SENTENCING

On December 14, 2006, Mr. Odle, through undersigned counsel, filed his Memorandum in Aid of Sentencing, which cited the draft presentence investigation report prepared by the Probation Office. On December 15, 2006, the Probation Office issued a revised presentence investigation report. Mr. Odle's sentencing proceeding is scheduled for December 20, 2006.

Attached at Exhibit A is a Revised Memorandum in Aid of Sentencing, which is identical to the original sentencing memorandum except that it cites the revised presentence report rather than the earlier draft report. Attached at Exhibit B are numerous letters written in support of Mr. Odle, which counsel had not yet received when the original sentencing memorandum was prepared, but which counsel respectfully requests to the Court to consider in advance of the sentencing proceeding.[1]

---

[1] Counsel still does not have originals of a couple of these letters in their possession. Counsel intends to produce the originals to the Court at the sentencing proceeding.

Respectfully submitted,

KELLEY DRYE COLLIER SHANNON

By: _____/s/_____

Barry J. Pollack
Dawn E. Murphy-Johnson
3050 K Street, N.W.
Washington Harbour – Suite 400
Washington, D.C.  20007
Telephone: (202) 342-8472
Facsimile:  (202) 342-8451

Date:  December 18, 2006

*Counsel for Keith Odle*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>KEITH ODLE, )<br>)<br>Defendant. )<br>) | Criminal No. 1:06-cr-00341 RMC |

### DEFENDANT KEITH ODLE'S REVISED
### MEMORANDUM IN AID OF SENTENCING

Mr. Odle has pled guilty to a two-count Information and is scheduled to be sentenced on December 20, 2006 at 2:00 p.m. Through counsel, Mr. Odle respectfully submits this Memorandum for the Court's consideration in conjunction with his sentencing.

### INTRODUCTION

On November 8, 2002, Mr. Odle was arrested at Eddie Leonard's Carryout in the District for possession with intent to distribute a detectable amount of PCP and ecstasy. The case was "no papered" in Superior Court. On December 16, 2002, Mr. Odle was arrested in Maryland and charged with being a felon in possession of a firearm. Mr. Odle pled guilty to that offense in the District of Maryland and was sentenced to 57 months' imprisonment. He has been serving that sentence from December 2002 to the present, primarily in Petersburg, Virginia.

Approximately three years later, on October 19, 2005, while still incarcerated, Mr. Odle was charged in a superseding indictment before this Court with being a member of the "M Street Crew." He was charged with a narcotics conspiracy and a RICO conspiracy and two substantive offenses of possession with intent to distribute PCP and ecstasy. The latter two offenses related to the November 8, 2002 incident at Eddie Leonard's Carryout. While not referenced in the

Superseding Indictment, the Government has proffered to the Court that as Mr. Odle was being led away from Eddie Leonard's Carryout in custody, Larry Gooch allegedly fired shots at patrol cars in the parking lot.    As the agreed statement of facts supporting the guilty plea unambiguously reflects, Mr. Odle was not a participant in this shooting and, indeed, was unaware that this shooting occurred.    See Facts in Support of Guilty Plea to Narcotics Conspiracy and RICO Conspiracy at 2 ("Keith Odle was about to be transported from the location by members of the Metropolitan Police Department when another person (unknown to him) fired a handgun at the police cars parked outside the establishment.").

The Superseding Indictment lists 142 overt acts in furtherance of the charged conspiracies and names Mr. Odle in only three of them. Each of the three occurred in November 2002 (Eddie Leonard's Carryout) or December 2002 (possession of a firearm).  It is no accident of pleading that the Superseding Indictment suggests that Mr. Odle was a brief and relatively minor participant in the charged conspiracies.  The Government concedes that not only was Mr. Odle incarcerated for the latter part of the conspiracy, but he was also not an early member of the conspiracy.  See Government's Notice of Extrinsic Evidence (July 19, 2006) at 12 ("Keith Odle was not an original crew member nor from M Street").  Rather, the Government characterizes Mr. Odle as a "short term crew member." Id.

Mr. Odle has lived in Maryland his entire life.  See Presentence Investigation Report (Dec. 15, 2006) at ¶ 54 [hereinafter "Presentence Report"].  His father lives in Hyattsville and his mother lives in Bowie. Id. at ¶ 48.  His parents divorced when he was eight years old. Id. Mr. Odle began drinking alcohol and using marijuana when he was thirteen years old and by the time he was seventeen, he was a heavy drinker and marijuana user and a regular user of cocaine. Id. at ¶¶ 60-62.  By age 20, Mr. Odle was also a heavy user of ecstasy. Id. at ¶ 64.  Despite this

2

history, Mr. Odle was not the beneficiary of any formal alcohol or drug treatment programs prior to his present incarceration. Id. at ¶ 65.

Mr. Odle received his high school diploma in 2000 from Northwestern High School in Hyattsville. Id. at ¶ 68. Mr. Odle took courses at Montgomery College in Rockville during the Fall 2000 semester, but was incarcerated and unable to return to classes in the Spring of 2001. Id. at ¶ 70.

Mr. Odle started selling drugs to support his own habit. Id. at ¶ 61, ¶ 64. However, consistent with the discussion above, Mr. Odle was never a full-time member of the M Street Crew, nor has he ever made a living selling drugs. Unlike his co-defendants, he has a solid track record of legitimate employment. See Government's Notice of Extrinsic Evidence (July 19, 2006) at 15 (stating that "except for Mr. Odle," the Government has obtained documentary evidence from tax records or the lack of filing showing that the defendants have not been lawfully employed for significant periods of their adult lives, which is circumstantial evidence tending to prove that they supported themselves through illicit means). Mr. Odle has worked as a barber at Salon Lamaj in the District, has worked for Barwood Taxi in Montgomery County and has worked as a temp in the mail room of the law firm of Wilmer, Cutler & Pickering in Washington. See Presentence Report at ¶¶ 72-74.

As with his schooling, Mr. Odle's employment has been interrupted by his incarceration. Quite simply, Mr. Odle's untreated drug and alcohol abuse, and his participation in illegal drug sales to finance his habits, have repeatedly interfered with Mr. Odle's otherwise positive record of education and gainful employment. Mr. Odle's lengthy track record of education and gainful, lawful employment provide every reason for the Court to be encouraged that should Mr. Odle be

able to conquer his substance abuse, he will be a solid contributor to society upon the completion of his current period of incarceration.

## ARGUMENT

Mr. Odle's sentencing range under his plea agreement is 10 to 16 years, to be served concurrently with the 57-month sentence that Mr. Odle is presently serving on the firearm offense that constituted an overt act in furtherance of the present charges. Mr. Odle has almost completed that sentence. Indeed, but for the present charges, Mr. Odle would have been released to a halfway house months ago. Instead, he has spent that time in Petersburg, and for the last few months, the D.C. Jail. Under the plea agreement, the Government has agreed to allocute for a sentence in the plea range of 10 to 16 years, to be served concurrently with the 57-month sentence. For the reasons set forth below, Mr. Odle respectfully requests a sentence of 10 years, which would effectively result in Mr. Odle serving an additional 63 months upon the expiration of his current sentence.

## I.    The Advisory Sentencing Guidelines

As set forth in the plea agreement, Mr. Odle's advisory Guidelines range is 131 to 178 months. This range results from an extraordinary enhancement under the Guidelines based on Mr. Odle's criminal history. As noted above, Mr. Odle, for his young age (he was 22 when he was incarcerated on the firearms offense), has a relatively lengthy criminal history related to his efforts to support his substance habits. He has a juvenile conviction of a misdemeanor theft under $300 in Maryland. See Presentence Report at ¶ 28. At age 18, he was convicted of simple possession of cocaine. Id. at ¶ 29. Also at age 18, he was twice convicted of possession of cocaine with intent to distribute. Id. at ¶¶ 30-31. This criminal history results in nine criminal history points and places Mr. Odle in criminal history Category IV. Id. at ¶ 36.

As noted in the plea agreement, because Mr. Odle has two or more prior drug trafficking offenses and is therefore treated as a career criminal, the ordinary offense level adjustments contemplated under the Guidelines become irrelevant and Mr. Odle's offense level is 34 and he is treated as a Category VI offender. After receiving three points for acceptance of responsibility, his adjusted offense level is 31, which at Category VI yields a sentencing range of 131 to 178 months (after credit for the 57-month sentence already being served). See U.S.S.G. § 5G1.3(b); Plea Letter from counsel for the United States to counsel for Mr. Odle (Nov. 9, 2006) at ¶ 5a.

This Guidelines calculation should be contrasted with the Guidelines calculation without the extraordinary enhancement based on Mr. Odle's status as a career criminal. Based on the quantity of drugs attributable to Mr. Odle, he would start at a level 32 pursuant to the drug quantity table. See U.S.S.G. § 2D1.1. Mr. Odle would receive a two-level enhancement under § 2D1.1(b)(1) for possession of a firearm, but Mr. Odle would also be eligible for a four-level reduction in his offense level under § 3B1.2, since he was a minimal participant in the alleged offense conduct. This would result in an offense level of 30. Following receipt of the three-level adjustment for acceptance of responsibility, Mr. Odle would have an adjusted offense level of 27. As a Category IV offender, which already takes into account his prior drug offenses, Mr. Odle would be in a sentencing range of 100 to 125 months, to be served concurrently with his present 57-month sentence.

The movement from an offense level 27, Category IV offender to an offense level 31, Category VI offender is an extraordinarily harsh result based on two prior state drug distribution convictions — both at the age of 18, each for small quantities of drugs. (The first of the two distribution offenses does not provide the street value of the drugs in Mr. Odle's possession; on

the second occasion, Mr. Odle possessed cocaine with a street value of $60. <u>See</u> Presentence Report at ¶ 31.

Under the circumstances, Mr. Odle's criminal history over-represents the seriousness of his prior criminal conduct and his likelihood of recidivism; therefore a downward departure would be appropriate. <u>See</u>, <u>e.g.</u>, <u>United States v. Clark</u>, 8 F.3d 839, 843-44 (D.C. Cir. 1993) (affirming that the district court was within its legal authority to depart downward based on the fact that the defendant's career offender status over-stated the seriousness of his criminal history or the likelihood of recidivism, and remanding for resentencing after consideration of factors such as the nature and timing of the defendant's prior offenses); <u>United States v. Bowser</u>, 941 F.2d 1019, 1024-26 (10th Cir. 1991) (affirming downward departure for over-representation of criminal history where two prior convictions were for offenses committed when defendant was 20 years old, they were committed close in time, and they were consolidated for sentencing); <u>United States v. Senior</u>, 935 F.2d 149, 151 (8th Cir. 1991) (affirming downward departure based on overstatement of seriousness of criminal history, citing defendant's age when prior drug offenses were committed, proximity in time, and state's assessment of seriousness of prior offenses as reflected in its handling of sentencing and length of time actually served); <u>United States v. Nielsen</u>, 427 F. Supp. 2d 872, 877-81 (N.D. Iowa 2006) (departing from sentence that would otherwise fall within the career-offender criminal history category, based on the defendant's relative youthfulness, his brief criminal career, the relatively minor nature of his prior offenses, and the temporal proximity between the predicate offenses used to trigger the career-offender status (less than two years apart)); <u>United States v. Lacy</u>, 99 F. Supp. 2d 108, 121-23 (D. Mass. 2000) (departing downward in sentencing of defendant who otherwise fell within the career-offender category, after finding that his record was largely non-violent, that his

prior offenses all took place within a short period of time, and that his record reflected his drug addiction); United States v. Hall, 40 F. Supp. 2d 340, 342-44 (D. Md. 1999) (holding that downward departure could be warranted when defendant's priors — at age 19 and 21 — were two relatively minor drug offenses in quick succession, were committed when he was a young man, and were such that he received mild sentences).

Thus, even if the Guidelines were mandatory, a downward departure would be warranted here. Departing to the requested level of 120 months (the low end of the plea agreement range), would result in Mr. Odle serving in the upper end of the 100 to 125-month range that his non-career criminal offense level and criminal history would dictate. Accordingly, after the requested departure, Mr. Odle would be left with a sentence that was both "severe and appropriate." See Hall, 40 F. Supp. 2d at 343.

Of course, the Guidelines are no longer mandatory. United States v. Booker, 543 U.S. 220 (2005). Accordingly, the Court need not decide whether it would have granted the requested departure in a mandatory Guidelines regime. As set forth below, the other factors under 18 U.S.C. § 3553(a) that must be considered pursuant to *Booker* militate in favor of the requested sentence.

## II.    Section 3553 Requires a Sentence Sufficient, but Not Greater than Necessary

Section 3553(a) dictates that a court *shall* impose a sentence "sufficient, but not greater than necessary" to meet the statutory objectives of sentencing: 1) to reflect the seriousness of the offense, to encourage respect for the law, and to provide just punishment; 2) to afford adequate deterrence; 3) to protect the public; and 4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553 (a)(1),(2). This dictate has appropriately taken on a renewed meaning

post-*Booker*.  See United States v. Foreman, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (sentencing court's "job is not to impose a 'reasonable' sentence.  Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).'"); United States v. Jimenez-Beltre, 440 F.3d 514, 525 n.8 (1st Cir. 2006) (sufficient, but not greater than necessary provision "is not just another 'factor' to be considered along with others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose").

### A.  The Seriousness of the Offense, Respect for the Law and Just Punishment

In pleading guilty to the Information against him, Mr. Odle has plainly accepted responsibility for extremely serious offenses.  At the same time, as discussed above, in assessing the "sufficient, but not greater than necessary" sentence warranted in order for Mr. Odle to receive just punishment, it is important to bear in mind Mr. Odle's relatively minor role in the charged offense conduct.  The bottom of the agreed-upon plea sentencing range, a sentence of 10 years' imprisonment, is a severe penalty.  Prior to commencing his present sentence, Mr. Odle had previously had contact only with the state criminal justice system.  He is now already bearing the consequences of having violated federal law.  Unlike his prior state sentences, the sentence he is currently serving, which at the low end of the agreed-upon range would be more than doubled by adding an additional 63 months, undoubtedly promotes respect for the law and signifies the seriousness of Mr. Odle's present offense conduct.

### B. Adequate Deterrence

For the reasons set forth in the preceding paragraph, the requested sentence of ten years' imprisonment easily affords adequate deterrence. Mr. Odle will, regardless of the Court's decision, serve a lengthy prison sentence. Moreover, Mr. Odle vividly understands that he now has a criminal history that would, if he were to repeat his offense conduct once released, necessarily result in a mandatory life sentence without parole. It is difficult to envision greater deterrence.

### C. Protection of the Public

As set forth above, Mr. Odle in no way minimizes the seriousness of his offense conduct. However, in comparison with his alleged co-conspirators, there is a plain distinction between those defendants charged with multiple murders and other violent offenses and Mr. Odle, who is not alleged to have committed any violence. Indeed, a review of Mr. Odle's criminal history reveals no history of violence on his part whatsoever. Illegal drug dealing naturally breeds violence and Mr. Odle, as discussed above, has every incentive to steer clear of such conduct in the future. In assessing Mr. Odle's individual danger to the community, however, the Court should not overlook the complete absence of violence in his past.

### D. Providing the Defendant with Needed Correctional Treatment

This last factor may be the most significant in this case. Mr. Odle entered the Bureau of Prisons as a young man with a high school diploma, some college education and a history of lawful gainful employment. Mr. Odle's downfall was that he was 22-year-old substance abuser

who never received appropriate treatment for his substance issues. During his current incarceration, while at Petersburg, he completed a 40-hour drug treatment program.[1]

At the low-end of the sentencing range set by the plea agreement, by the time of his release, Mr. Odle will have served virtually his entire adult life in prison and will not have used drugs or alcohol for a decade. He will also have had the opportunity to avail himself of the full panoply of drug and alcohol treatment offered by the Bureau of Prisons. He would re-enter society in his early 30's with the opportunity to rejoin the work force and/or continue his education. Having received all of the correctional treatment that can be offered, his success or failure will be up to him.

There is nothing that a longer period of incarceration can accomplish in terms of the effective provision of education, vocational training, medical care, or other correctional treatment. Rather, a longer sentence would simply lengthen Mr. Odle's exposure to hardened criminals and further delay his re-entry into society.

## CONCLUSION

For the reasons set forth above, Mr. Odle respectfully requests a prison sentence of ten years, to be served concurrently with the sentence he is presently serving. He requests that the Court recommend any drug and alcohol treatment deemed appropriate for him while he is imprisoned, to continue through his period of supervised release. The sentence requested by Mr. Odle is within the range in which the Government has agreed to allocute and would be permissible under the mandatory Guidelines with a reasonable downward departure for over-representation of criminal history. More significantly, the sentence sought by Mr. Odle is a

---

[1] Mr. Odle has also voluntarily taken advantage of several other programs offered at Petersburg, including business courses, a training program through which he has obtained his commercial drivers license, another program geared toward developing a career as a personal trainer, and an AIDS awareness class.

"sufficient, but not greater than necessary" sentence reflecting the statutory objectives of § 3553.

It is, therefore, a reasonable, and appropriate, post-*Booker* sentence.

Respectfully submitted,

KELLEY DRYE COLLIER SHANNON

By: _____/s/_____
Barry J. Pollack
Dawn E. Murphy-Johnson
3050 K Street, N.W.
Washington Harbour – Suite 400
Washington, D.C. 20007
Telephone: (202) 342-8472
Facsimile: (202) 342-8451

Date: December 18, 2006                *Counsel for Keith Odle*

December 12, 2006

Honorable Judge Rosemary M. Collyer
333 Constitution Avenue NW
Washington, DC 20006

Dear Judge Collyer:

I would like to thank you for allowing me this chance to voice my opinion and give a statement on behalf of my son Keith Odle.

I have raised this young man to the best of my ability. I have taught him well educationally, mentally, socially and most of all spiritually. It is unfortunately that he did not always make the right decision as far as his choices and friends are concern

I remember when Keith was in the 12th grade and did not do very well and he had to go to summer school. He did what was needed, graduated in the summer and enrolled in Montgomery College in the fall semester of the year 2000. I know my son is able to do whatever is needed to get his life in order. I pray whatever time he has left he will devote it to doing every thing possible to prepare his life to return to society.

Keith in these last 4 years has grown a lot mentally as well as spiritually. I know that he is sorrowful and regretful of the choice he has made which has caused him to spend 4 years of his life in the penile system. I also am proud that he has done so well as far as his behavior and was released from the medium to the camp within 1 years of his imprisonment.

Unfortunately, the choices he has made and the way the judicial system is set up for rehabilitation, it is not always easy for our young black to do their time and go forward with their life. We as parents always pray that some how a miracle will occur but I know that this is not possible now and Keith will have to finish this sentence and be then he will be released. I know Judge Collyer that you

have his best interest at heart and you will make the right decision and I hope
you will be lenient in your sentencing and Keith will do everything to continue
his rehabilitation.

Thanking you in advance,

Jacqueline Odie

December 15, 2006

Keith A. Odle Sr.
1201 Rosedale Court
Hyattsville, MD  20782

Honorable Judge Rosemary Collyer
333 Constitution Avenue NW
Washington, DC 20006

Dear Judge Collyer:

In regards to my son, Keith Odle Jr. sentencing I would like to bring to your attention what I have noticed over the past five years, the growth I have seen in Keith has been astonishing.  Deep in my heart I feel as though he has learned his lesson.  I have seen him develop a closer relationship with God and applied it to his everyday life.

I think he has become a better man, and I would like to ask you Judge Collyer for leniency for my dear son, Keith Jr.

Thank you,

Keith Odle Sr.

December 15, 2006

The Honorable Judge Rosemary M. Collyer
333 Constitution Avenue NW
Washington, DC 20006

Dear Judge Collyer:

I am Vida Odle, Keith's paternal Grandmother.  I have always been involved in Keith life and I have seen him grow up to be the man that he is now. He reminds me so much of his father, my youngest son.  As a grandmother, you try to instill the wisdom that you have obtained from raising your children and also being a part of your grandchildren lives.

Keith was the type of child that always made sure he came to see his grandmother and called me to see if I needed anything.  He was the only one of his mother's children that was always a part of my life.

Sadly with the choice he has made he has not been able to come around as I grow older.  I pray you will be light in your sentencing my grandson, Keith.

I look forward to the day he will return home and spend time with me before I leave this earth, because it means so much to me.  I will always keep him in my prayers and I hope he will do whatever it takes to rehabilitate himself and be released back into society.

Sincerely,

*Vida Odle*

Vida Odle

District of Columbia Circuit Court
The Honorable Judge Rosemary Collyer
333 Constitution Avenue, NW
Washington, DC 20001

Subject: Keith A. Odle, Jr.

Dear Judge Rosemary Collyer,

This has been one of the hardest letters I have ever had to construct. Words cannot explain the complex feelings that I have concerning my brother and his current situation. However, I can honestly say that I am so proud of what a man he has become despite the trials and tribulations he has encountered.

I am one of Keith's older sisters and we have a very good relationship. I have watched Keith grow from a boy to a man and he has done well. Although Keith has made some unhealthy choices in life, he has lived and learned from them. Life is an ongoing learning experience and Keith has really embraced it. He is a great example of a young African-American man who has taken his negative situation and has made it positive. He been rewarded during his sentence and was allowed to serve the remainder of it in the Federal Prison Camp. In addition, he was only obligated to serve 85% of his sentence for good behavior. He has also developed a stronger relationship with God during the past 5 to 7 years of his life. Keith is one of the few men who has used to system to rehabilitate his self.

The progress that Keith has shown should be taken into consideration regarding Keith and his growth as a young African-American male in the justice system. I am praying that my brother is home soon to continue to grow as a man, to strengthen his relationship with God and his family, and to develop a loving and mentoring relationship with his new nephew, my son. I want Keith to be allowed the opportunity to apply what he has learned during his sentence to change his life while he is still young. I would hate to see another young African-American man be taken by the "system". Thank you for your time.

Very Respectfully,

Kyisha Cannady

December 14, 2006
Cassandra Jackson
1404 Nicholson Street
Hyattsville, MD 20782


Dear Honorable Judge Rosemary M. Collyer:

I am writing this letter on behalf of Keith Odle, a young man who will stand before you for sentencing.

By way of background, I would like to give you a little family history.  I have known Keith since he was about ten years old. I am a very close friend of Jackie, his mother. All of us attends the Greater Mount Calvary Holy Church and serves on the Usher Board.  Keith's mother is a very hard working dedicated citizen who is adamant regarding several things for her children; education, community and not getting caught up in peer pressure.

I need you to understand that his entire family is devastated by this and more importantly we are committed to turning this situation into one, which he learns from and grows through.

It is very easy in this day and time for people to assume that all young people are going to make mistakes as adolescents and that by the time they reach adulthood those mistakes will be behind them. Keith is a young man who did not go through those trouble periods; instead he stuck close to the family, worked hard in school and stayed involved with positive influences.  Somewhere along the way he fell captive to peer pressure.

It is my understanding, that a judge has wide latitude of discretion when it comes to the punishments, which he can impose, and that the ultimate goal of the judicial system is to ensure that offenders, like Keith, don't become repeat offenders who drain the resources of the state. I sincerely hope that you will view Keith as an individual and that you impress upon him the fact that his actions were wrong, but that they do not have to be a death knell.  His family and I understand the importance of Keith learning from this experience.

However, as close friends of his family I want to be a part of the process of straightening out any misguided beliefs that there are shortcuts in life. I hope that Keith will learn from these developments, but we are attempting to ensure that he continues to grow as a part of a loving and supportive family.

Keith Odle/December 14, 2006                                    Page 2

I believe Keith has done a great deal of soul searching in the months he has been away from his family. We can only hope that you see fit to return Keith to his family with the assurance that we will do everything possible to ensure that he will work hard to be more responsible and to keep his nose clean.

I understand that Keith has agreed to a plea. Therefore, I hope you find it in your heart to be lenient in your decision regarding his future an issue him a lesser sentence.

Thank you for your time and consideration.

                                    Sincerely,

                                    Cassandra D. Jackson

**Betty L. Rice**
2110 12th Place, NW
Washington, DC 20009
(202) 248-1015

The Honorable Judge Rosemary Collyer
District of Columbia Federal Court

Dear Judge Collyer:

I have been asked to write to you concerning Keith A. Odle who will soon be
appearing before you.

I have known Keith's mother Jackie for more than fifteen years. We attend
Greater Mount Calvary Holy Church, at 610 Rhode Island Avenue, NE. We have
both served on the Usher Board ministry the entire time. It is through that
relationship that I met her young son Keith.

I found Keith to be a charming, respectful and pleasant young man. For a while
during those earlier years Keith also served on the Youth and Young Adult
Ushers Board where he received several awards and certificate. I know Keith as
a young man who has sometimes struggled to do what is right and those forces
outside of his family and household that pulls him in another direction.

I believe in my heart that Keith will one day make us all proud when he becomes
the young man that God has made him to be – the one that his mother is praying
daily that she knows that he was born to be.

Judge Collyer, I pray your mercy as you perform your duties as it relates to Keith.
I thank you for this opportunity to speak on behalf of Keith and the love and
confidence that his family has in his future as a productive citizen of his
community.

Sincerely,

Betty L. Rice
Resident, DC

-----Original Message-----
From: cixxmom@yahoo.com
To: odlejac056@aol.com
Sent: Fri, 15 Dec 2006 5:35 PM
Subject: Keith


Blanche Rich
Georgetown University Hospital
3800 Reservoir Road NW
Washington, DC 20008

The Honorable Judge Rosemary Collyer
333 Constitution Avenue NW
Washington, DC

Dear Judge Collyer:

My name is Blanche Rich; I am a Financial Advisor at Georgetown University Hospital
for 22 years. I have one child, Christopher Rich. I am a family friend of the Odle's
since the early 90's. Throughout the years our families have enjoyed outings
together. So I practically watched Keith grow up into a well-mannered and
intelligent young man. I watched Keith being brought up in the church, even-though
he got older; he still maintained attendance with his family every Sunday. I watched
during the years of his achieving academic excellences, and how he started his first
job. I was proud of how he saved his earnings instead of going on spending sprees.
I would listen to how he wanted to mimic his mother and father's work ethics. I
knew he was well on his way in to manhood, the way our families pictured.


In 1999, we moved away from the area, so our sons lost contact with each other.
Although, Jacqueline and I still work together, we struggled together for our family
outings. My son got into trouble and was away for five years. During those years,
we paired up again to visit our sons only a few miles away. We diligently kept our
focus on maintaining the strength that our sons were brought up on. During my
son's incarceration he maintained his religious belief, and took college courses to
stay focus. He's been home for over a year now. He found employment within a
month of being released; he has his own apartment and owns his vehicle.

During those years our sons were incarcerated, I would hear about Keith's phone
calls and his letters on his respect and good rapport with others while incarcerated,
and how still supportive and concerned he was about his family. It reminded me
that what we instilled in our sons, he has maintained.

On behalf of Keith Odle, I asked that leniency be considered in sentencing.



Respectfully,

Blanche Rich